## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARK BURGE** | **CIVIL ACTION** |
| **versus** | **NO. 13-721** |
| **BURL CAIN** | **SECTION: "F" (1)** |

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

On September 17, 1977, petitioner, Mark Burge, was convicted of aggravated kidnapping and aggravated rape under Louisiana law.[1]  On October 21, 1977, he was sentenced on each conviction to a term of life imprisonment without benefit of parole, probation, or suspension of sentence, and it was ordered that those sentences be served consecutively.[2]  On September 5, 1978, the Louisiana Supreme Court affirmed his convictions, vacated his sentence on the aggravated

---

[1] State Rec., Vol. VI of XI, transcript of September 16, 1977, p. 253; State Rec., Vol. I of XI, minute entry dated September 16, 1977; State Rec., Vol. I of XI, jury verdict forms.

[2] State Rec., Vol. I of XI, minute entry dated October 21, 1977.

rape conviction, and remanded the matter for resentencing on that conviction.[3]  Petitioner was

thereafter "resentenced on remand to fifty-years imprisonment without benefit of parole, probation,

or suspension of sentence for the lesser included offense of attempted aggravated rape, to be served

consecutively to the life sentence."[4]

---

[3] State v. Burge, 362 So.2d 1371 (La. 1978); State Rec., Vol. VII of XI.  At the time of the offense in this case, aggravated rape was a capital crime under Louisiana law; however, in Coker v. Georgia, 433 U.S. 584 (1977), the United States Supreme Court later held that a sentence of death for the crime of rape of adult woman is unconstitutional.  As result, the Louisiana Supreme Court held that petitioner must be resentenced, explaining:

> It is well accepted that an offense retains its "capital" nature within the meaning of LSA-R.S. 13:1570 even though the death penalty is no longer available because of constitutional infirmity. State v. Hills, La., 354 So.2d 186 (1977); State v. Moore, La., 340 So.2d 1351 (1976); State v. Smith, La., 339 So.2d 829 cert. denied, 430 U.S. 986, 97 S.Ct. 1685, 52 L.Ed.2d 381 (1977).
>
> Moreover, we have consistently held that although the death penalty may be unconstitutional, the prosecution for the offense is nonetheless valid.  Where necessary, an improper death sentence is vacated, and the case is remanded for resentencing to the most serious penalty for the next lesser included offense.  State v. Craig, La., 340 So.2d 191 (1976); State v. Lee, La., 340 So.2d 180 (1976); State v. Sledge, La., 340 So.2d 205 (1976).
>
> We note, however, that defendant Burge was improperly sentenced.  At the time of the offense (July, 1976), there was no alternative life sentence available to the jury, as the offense preceded the effective date of LSA-C.Cr.P. Art. 905.6, October 1, 1976.  Accordingly, we must vacate Burge's life sentence for aggravated rape and remand to the trial court for resentencing for the most serious penalty for the next lesser included offense – attempted aggravated rape.  LSA-C.Cr.P. Art. 814 as amended by Acts 1973, No. 126, § 1.

Burge, 362 So.2d at 1375.

[4] See State v. Burge, No. 2012 KA 0761, 2012 WL 6681831, at *1 (La. App. 1st Cir. Dec. 21, 2012).

In 1984, petitioner filed an application for post-conviction relief with the state district court.[5]  That application was denied on April 6, 1984.[6]  The Louisiana Supreme Court then denied his related writ application on April 19, 1985.[7]

In 1986, petitioner filed an application with this Court seeking federal *habeas corpus* relief.[8]  On November 30, 1987, that application was granted to the limited extent that the state was ordered to resentence him on the aggravated kidnapping conviction to simple life imprisonment, i.e. without the original sentence's prohibition against the benefit of parole, probation, or suspension of sentence.[9]  On March 10, 1989, the United States Fifth Circuit Court of Appeals affirmed that judgment.[10]

In the interim, petitioner filed another application for post-conviction relief with the state district court in 1987.[11]  That application was denied on May 19, 1987.[12]

---

[5] State Rec., Vol. VII of XI.

[6] State Rec., Vol. VII of XI, Reasons for Judgment dated April 6, 1984; State Rec., Vol. IX of XI, transcript of April 6, 1984.

[7] State *ex rel.* Burge v. State, 466 So.2d 451 (La. 1985); State Rec., Vol. VII of XI.

[8] State Rec., Vol. VII of XI.

[9] Burge v. Blackburn, No. 86-3800 (E.D. La. Nov. 30, 1987); State Rec., Vol. VII of XI.

[10] Burge v. Butler, 867 F.2d 247 (5th Cir. 1989); State Rec., Vol. VIII of XI.

[11] State Rec., Vol. VII of XI.

[12] State Rec., Vol. VII of XI, Reasons for Judgment dated May 19, 1987.

In 1990, petitioner filed another application for post-conviction relief with the state district court.[13]  That application was denied on August 22, 1990.[14]  The Louisiana Supreme Court then denied his related writ application on September 27, 1991,[15] and the United States Supreme Court denied his petition for a  writ of certiorari on February 24, 1992.[16]

In 1992, petitioner filed a motion to correct an illegal sentence with the state district court.[17]  That motion was denied on April 7, 1992.[18]  His related writ application was then likewise denied by the Louisiana First Circuit Court of Appeal on August 18, 1992.[19]

In 1998, petitioner filed another application for post-conviction relief with the state district court.[20]  That application was denied on August 5, 1998,[21] as was a motion to reconsider[22]

---

[13] State Rec., Vol. VII of XI.

[14] State Rec., Vol. VIII of XI, Reasons for Judgment dated August 22, 1990.

[15] State *ex rel.* Burge v. Whitley, 585 So.2d 562 (La. 1991); State Rec., Vol. VIII of XI.

[16] Burge v. Whitley, 502 U.S. 1114 (1992); State Rec., Vol. VIII of XI.

[17] State Rec., Vol. VIII of XI.

[18] State Rec., Vol. VIII of XI, Judgment and Reasons for Judgment dated April 7, 1992.

[19] State *ex rel.* Burge v. Secretary, No. 92 KW 0826 (La. App. 1st Cir. Aug. 18, 1992); State Rec., Vol. VIII of XI.

[20] State Rec., Vol. VIII of XI.

[21] State Rec., Vol. VIII of XI, Reasons for Judgment dated August 5, 1998.

[22] State Rec., Vol. VIII of XI.

on September 17, 1998.[23]  The Louisiana Supreme Court then denied his related writ application on February 5, 1999.[24]

On April 28, 2011, petitioner, through counsel, filed with the state district court a motion to correct an illegal sentence, arguing that his sentence on the aggravated kidnapping conviction was illegal under Graham v. Florida, 560 U.S. 48 (2010).[25]  On September 12, 2011, the court granted the motion and resentenced him on that conviction to a consecutive term of five years imprisonment.[26]  On December 21, 2012, the Louisiana First Circuit Court of Appeal vacated that judgment and remanded the matter for resentencing.[27]  Petitioner then filed an application for rehearing,[28] which was denied on January 23, 2013.[29]  The Louisiana Supreme Court thereafter denied his related writ application on March 8, 2013.[30]  On June 24, 2013, the state district court resentenced petitioner to a term of life imprisonment *with* benefit of parole.[31]  After that resentencing, neither petitioner nor the state sought further review from the Louisiana First Circuit

---

[23] State Rec., Vol. VIII of XI, Judgment dated September 17, 1998.

[24] State *ex rel.* Burge v. State, 737 So.2d 744 (La. 1999); State Rec., Vol. IX of XI.

[25] State Rec., Vol. IX of XI.

[26] State Rec., Vol. IX of XI, transcript of September 12, 2011; State Rec., Vol. VII of XI, minute entry dated September 12, 2011.

[27] State v. Burge, No. 2012 KA 0761, 2012 WL 6681831 (La. App. 1st Cir. Dec. 21, 2012).

[28] State Rec., Vol. X of XI.

[29] State Rec., Vol. X of XI.

[30] State v. Burge, 109 So.3d 367 (La. 2013); State Rec., Vol. X of XI.

[31] Supplemental State Rec., Vol. I of I.

Court of Appeal or the Louisiana Supreme Court.[32]  On March 13, 2014, petitioner was released on parole.[33]

Prior to his release, petitioner filed the instant federal *habeas corpus* application in which he argued that the Louisiana First Circuit Court of Appeal's 2012 decision violated his right to both procedural and substantive due process and further imposed a new sentence in violation his rights under the *Ex Post Facto* Clause.[34]  The state filed a response in opposition to the application,[35] and petitioner filed a reply to the state's response.[36]

I.  Facts

Petitioner and a co-defendant, Anthony Wayne Morrow, were charged with and jointly tried for aggravated kidnapping and aggravated rape.  On direct appeal, the Louisiana Supreme Court summarized the facts of the case as follows:

> [O]n July 28, 1976, defendants placed a sharp object at the throat of a female shopper as she returned to her car.  The two then forced the woman into the passenger side of the vehicle and drove her to a

---

[32] This information was obtained from the Clerks of the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court on May 6, 2015, and was subsequently confirmed by the parties.

[33] This information was provided to the Court by Carol A. Kolinchak, petitioner's counsel in this federal proceeding.

[34] Rec. Doc. 1.  Because petitioner remains on parole, he is still "in custody" for the purposes of 28 U.S.C. § 2254 and his challenge remains an active "case or controversy" for the purposes of Article III, § 2, of the United States Constitution.  Spencer v. Kemna, 523 U.S. 1, 7 (1998).

[35] Rec. Docs. 10 and 11.

[36] Rec. Doc. 12.

deserted area, where she was beaten and raped.  Afterwards, the victim was released; she identified the defendants as the culprits.[37]

## II.  State's Procedural Objections

The state concedes that petitioner's federal application is timely.[38]  However, the state raises the following other procedural objections.

The state argues that petitioner's application should be dismissed because it is a "second or successive" application which has been filed without the required authorization from the United States Fifth Circuit Court of Appeals.  See 28 U.S.C. § 2244.  That argument is misplaced for two reasons.

First, since his initial federal application in 1980s, petitioner has been resentenced, an event which resulted in a new state criminal judgment for the purposes of 28 U.S.C. § 2254. Because his current petition challenges a *different judgment* than was challenged in his previous federal petition, the current petition does not qualify as a "second or successive" application within the meaning of § 2244.  See, e.g., Magwood v. Patterson, 561 U.S. 320, 331 (2010) ("Magwood ... reads § 2244(b) to apply only to a 'second or successive' application challenging the same state-court *judgment*.  According to Magwood, his 1986 resentencing led to a new judgment, and his first application challenging that new judgment cannot be 'second or successive' such that § 2244(b) would apply. We agree.").  Simply put:  where, as here, "there is a new judgment intervening

---

[37] State v. Burge, 362 So.2d 1371 (La. 1978); State Rec., Vol. VII of XI.

[38] Rec. Doc. 11, p. 5.

between the two habeas petitions, an application challenging the resulting new judgment is not 'second or successive' at all." Id. at 341-42 (citation and quotation marks omitted).

Second, in any event, petitioner's claims in the instant petition allege that his rights were violated by the Louisiana First Circuit Court of Appeal's decision in 2012. Because that decision was issued more than two decades after his first federal application was filed and adjudicated, the instant claims obviously could not have been asserted in the prior application. Therefore, the prior authorization requirements of § 2244 do not apply. See, e.g., In re Tamayo, 552 Fed. App'x 371, 374 (2014) ("Here, Tamayo could not have raised his claim based on the January 2014 IACHR decision in his first federal habeas petition in September 2003. Therefore, it is unnecessary for Tamayo to seek authorization to file a successive habeas petition concerning the IACHR decision and instead he properly filed his habeas petition in the district court under § 2254."); United States v. Orozco-Ramirez, 211 F.3d 862, 869 (5th Cir. 2000) (if the facts on which a petitioner's underlying claim did not occur until after his first *habeas* application was filed, his subsequent petition is not subject to the § 2244's restrictions on "second or successive" applications).

The state next argues that petitioner's federal application was premature at the time of filing because he had not yet been resentenced by the state district court on the aggravated kidnapping conviction. However, as noted, petitioner was subsequently resentenced and his state criminal judgment is now final. Accordingly, the state's prematurity argument is moot.

The state also argues that petitioner's claims are unexhausted. The Court disagrees. Petitioner's claims challenge purported defects arising from the Louisiana First Circuit Court of Appeal's 2012 decision, and those claims were presented both to that court in the application for

rehearing and to the Louisiana Supreme Court in the related writ application.  Considering the nature of the claims, that should suffice.  Nevertheless, in any event, a federal court has the authority to deny unexhausted claims on the merits.  28 U.S.C. § 2254(b)(2).  Because petitioner's claims are plainly meritless for the reasons explained herein, it is recommended that they be dismissed on that basis even if the United States District Judge finds that they are in fact technically unexhausted.

### III.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat

> the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>     If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state*

- 11 -

> *court's ruling on the claim being presented in federal court was so*
> *lacking in justification that there was an error well understood and*
> *comprehended in existing law beyond any possibility for fairminded*
> *disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law

and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S.

Ct. 1697, 1701 (2014).

## IV.  Petitioner's Claims

### A.  Procedural Due Process Claim

Petitioner's first claim is that his right to *procedural* due process was violated by the

manner in which the Louisiana First Circuit Court of Appeal handled the 2012 appeal of his

resentencing.  As previously explained, petitioner, through counsel, filed with the state district court

a motion to correct an illegal sentence, arguing that his sentence on the aggravated kidnapping

conviction was illegal under Graham v. Florida, 560 U.S. 48 (2010).[39]  On September 12, 2011, the

district court granted that motion and resentenced petitioner on that conviction to a consecutive term

---

[39] State Rec., Vol. IX of XI.

of five years imprisonment.[40]   On October 12, 2011, the state moved to appeal,[41] which the district

court granted.[42]   On June 21, 2012, petitioner filed his brief with the Louisiana First Circuit Court

of Appeal, arguing that the state had not filed a brief, and, as a result, the appeal should be dismissed

because the state's grounds for appeal had been abandoned and no patent error existed on the face

of the record.[43]   The state then filed its brief on June 27, 2012.[44]   On June 29, 2012, the Court of

Appeal issued a notice informing the state:

> Your appellant brief, due June 1, 2012, **was filed on June 27, 2012 – LATE**.  Therefore, your attention is respectfully directed to Rule 2-8.6 of the Uniform Rules of Appeal and this Notice is issued to advise you your appeal *would have been* reviewed for patent error only and subject to dismissed [sic] if an appellant brief had not been filed on or before July 29, 2012.[45]

Thereafter, on December 21, 2012, the Louisiana First Circuit Court of Appeal vacated the five-year

sentence, holding that, pursuant to State v. Shaffer, 77 So.3d 939 (La. 2011), the relief which should

have been granted was the imposition of a life sentence with the possibility of parole.[46]

---

[40] State Rec., Vol. IX of XI, transcript of September 12, 2011; State Rec., Vol. VII of XI, minute entry dated September 12, 2011.

[41] State Rec., Vol. IX of XI.  In the federal application, petitioner's counsel repeatedly notes that the motion for appeal was filed "on the last possible day."  While counsel's observation in correct, it is also irrelevant.  The state was under no obligation to file its motion any earlier.

[42] State Rec., Vol. IX of XI, Order dated October 13, 2011.

[43] State Rec., Vol. X of XI.

[44] State Rec., Vol. X of XI.

[45] State Rec., Vol. X of XI (emphasis in original).

[46] State v. Burge, No. 2012 KA 0761, 2012 WL 6681831 (La. App. 1st Cir. Dec. 21, 2012).

Petitioner then filed an application for rehearing, arguing:

>     This Court's opinion incorrectly holds that Mr. Burge's term
> of years sentence was improper.  The Court misinterprets <u>Shaffer</u>, 11-
> 1756; 77 So. 3d 939 as completely overruling <u>State v. Craig</u>, 340
> So.2d 191, 194 (La. 1976) and establishing the exclusive remedy for
> <u>Graham</u> relief.  <u>Craig</u> remains a legal alternative remedy, and Mr.
> Burge's case is distinct from <u>Shaffer</u> as well as other First Circuit
> cases because Mr. Burge is not seeking <u>Craig</u> relief for the first time
> on appeal, but has already been legally resentenced under <u>Craig</u> by
> the trial court.  This legally imposed sentence is subject to review
> only for a manifest abuse of discretion, and the district court did not
> abuse its wide discretion in following well-established precedent.
> Even if Mr. Burge's sentence were improper, the State failed to
> preserve the proper ground for appeal, and so this Court should not
> have vacated Mr. Burge's sentence.  The State's appeal should be
> dismissed as untimely.  Lastly, the arbitrary reversal of the district
> court's sentence violates Mr. Burge's rights to due process and
> freedom from ex post facto punishment under the Louisiana and
> federal constitutions.[47]

Without additional reasons assigned, the Louisiana First Circuit Court of Appeal then denied the

application for rehearing.[48]

    Petitioner thereafter filed an application for a supervisory writ with the Louisiana

Supreme Court, making the same arguments he made in the application for rehearing.[49]  The

Louisiana Supreme Court denied that application without assigning reasons.[50]

-------

[47] State Rec., Vol. X of XI, Application for Rehearing.

[48] State Rec., Vol. X of XI.

[49] State Rec., Vol. XI of XI.

[50] <u>State v. Burge</u>, 109 So.3d 367 (La. 2013); State Rec., Vol. X of XI.

In this federal proceeding, petitioner argues that the "haphazard"[51] and "unpredictable state appellate procedures"[52] employed by the Louisiana First Circuit Court of Appeal in handling the state's appeal violated his right to procedural due process because it denied him "any orderly or meaningful opportunity to be heard."[53]   Specifically, he argues that the Court of Appeal violated explicit or implicit rules of state procedure in considering the state's untimely appellate brief, ruling on the appeal without further notice or briefing after the state's untimely filing, and excusing the state's failure to comply with the state's procedural rules for preserving issues for appellate review.

Therefore, the crux of petitioner's argument is that the state courts misapplied state procedural law in the handling of the state's appeal.   Of course, mere errors by the state courts in applying their own law are generally insufficient to warrant federal *habeas* relief.   See, e.g., Engle v. Isaac, 456 U.S. 107, 119 (1983); Nyberg v. Cain, Civ. Action No. 15-98, 2015 WL 1540423, at *5 (E.D. La. Apr. 7, 2015).   Instead, federal relief is warranted only where the errors of state law result in a denial of the fundamental fairness  to which a petitioner is separately entitled under federal law.   See, e.g., Cobble v. Smith, 154 Fed. App'x 447, 454 (6th Cir. 2005) ("In other words, only an error of state law that denies 'fundamental fairness' such that due process is violated supports a federal habeas corpus claim.").   Here, petitioner alleges such a denial of fundamental fairness.

However, even if this Court were to assume that the Louisiana First Circuit Court of Appeal failed to follow proper procedures in adjudicating the state's appeal, petitioner had, and in

---

[51] Rec. Doc. 1, pp. 8-9.

[52] Rec. Doc. 1, p. 6.

[53] Rec. Doc. 1, p. 5.

fact availed himself of, further recourse, i.e. seeking review by the Louisiana Supreme Court. Because he was afforded a meaningful opportunity have his challenge to the Court of Appeal's action heard and reviewed by the Louisiana Supreme Court, his right to procedural due process was adequately protected. Cf. Norris v. Schotten, 146 F.3d 314, 329 (6th Cir. 1998) ("Even assuming that the state trial court acted arbitrarily and deviated from proper procedures in denying appellant's motion to discharge, any insufficiency in procedural due process was cured through the appellate review process that was available to appellant and which appellant took advantage of. In requesting federal habeas relief, appellant has not claimed and offers no proof that the Ohio court system as a whole is arbitrary and lacks a rational mechanism/process for remedying errors. Thus, we find appellant's due process argument to be unconvincing." (citation omitted)); Robinson v. LeBlanc, Civ. Action No. 04-1285, 2008 WL 506151, at *8 (E.D. La. Feb. 21, 2008) ("To the extent that state rules of appellate procedure were allegedly not complied with, Robinson's recourse was to bring those alleged failures to the attention of the Louisiana Fourth Circuit or the Louisiana Supreme Court. However, those alleged failures do not become errors of constitutional magnitude simply because they were decided adversely to Robinson.").

       For all of these reasons, petitioner has not shown that the state court's decision denying his procedural due process claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, relief is not warranted.

B.  Substantive Due Process Claim and *Ex Post Facto* Claim

Petitioner also claims that his right to *substantive* due process and his rights under the *Ex Post Facto* Clause were violated by the Louisiana First Circuit Court of Appeal's action in overturning his five-year sentence by  relying on case law and legislation that did not exist at the time of his initial resentencing in the district court.  These claims will be considered together because they are founded on similar concerns.  Specifically, a petitioner's right to substantive due process can in some circumstances be violated by a court's unjustified and unpredictable break from existing case law, while his rights under the *Ex Post Facto* Clause can be violated where a court retroactively applies a change to a penal statute to his disadvantage.  Therefore, while the Due Process and *Ex Post Facto* Clauses apply in different contexts, they are similar in that they "safeguard common interests – in particular, the interests in fundamental fairness (through notice and fair warning) and the prevention of the arbitrary and vindictive use of the laws."  Rogers v. Tennessee, 532 U.S. 451, 460 (2001).

For petitioner's claims to be properly analyzed, the applicable sequence of events must be noted:  Petitioner had originally been sentenced on the aggravated kidnapping conviction to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.  As a result of the prior federal proceedings, the original sentence's provision prohibiting parole, probation, or suspension of sentence was then technically eliminated; however, as a practical matter, he remained ineligible for parole under Louisiana law because his sentence was for life rather than for a term of years.  See La. Rev. Stat. Ann. § 15:574.4(B).  The United States Supreme Court then subsequently held: "The Constitution prohibits the imposition of a life without parole sentence on

- 17 -

a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual

release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity

to obtain release before the end of that term."  Graham v. Florida, 560 U.S. 48, 82 (2010).  Petitioner

thereafter sought relief in the state district court based on Graham.  That court determined that his

sentence ran afoul of Graham and, looking to existing state jurisprudence, concluded that the

appropriate remedy was to resentence him to a term of five-years imprisonment for the responsive

offense of simple kidnapping.  The state then appealed, the Louisiana First Circuit Court of Appeal

held:

> In its sole assignment of error, the State argues the trial court erred in granting the motion to correct illegal sentence.  Specifically, the State contends it was improper for the trial court to vacate the defendant's life sentence without parole for his aggravated kidnapping conviction and to resentence him to five-years imprisonment for simple kidnapping.
>
> In Graham, 130 S.Ct. at 2034, the Supreme Court held that the United States Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. La. R.S. 15:574.4(B) provides, in pertinent part, that "no prisoner serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years."  La. R.S. 15:574.4(A)(2) provides, in pertinent part:
>
>> [A] person committed to the Department of Public Safety and Corrections for a term or terms of imprisonment with or without benefit of parole for thirty years or more shall be eligible for parole consideration upon serving at least twenty years of the term or terms of imprisonment in actual custody and upon reaching the age of forty-five.
>
> In State v. Shaffer, 11-1756 (La. 11/23/11), 77 So.3d 939, 942 (per curiam), our supreme court found that Graham required the relators, and all other persons similarly situated, to have a meaningful

opportunity to secure release as a regular part of the rehabilitative process.  Accordingly, the <u>Shaffer</u> Court, 77 So.3d at 942, held:

> [T]he Eighth Amendment precludes the state from interposing the Governor's ad hoc exercise of executive clemency as a gateway to accessing procedures the state has established for ameliorating long terms of imprisonment as part of the rehabilitative process to which inmates serving life terms for non-homicide crimes committed when they were under the age of 18 years would otherwise have access, once they reach the age of 45 years and have served 20 years of their sentences in actual custody. The state thus may not enforce the commutation provisos in La. R.S. 15:574.4(A)(2) and 15:574.4(B) against relators and all other similarly situated persons, and the former provisions offer objective criteria set by the legislature that may bring Louisiana into compliance with the <u>Graham</u> decision. (Footnotes omitted).

The defendant argues in brief that <u>Shaffer</u> did not create an exclusive remedy under <u>Graham</u> and, further, that our supreme court therein did not overrule longstanding precedent that permits sentences such as the five-year sentence he received.  We do not agree.  The <u>Shaffer</u> Court, along with its two companion cases, specifically tailored its decision to comply with <u>Graham</u>.  <u>See State v. Dyer</u>, 11-1758 (La. 11/23/11), 77 So.3d 928 (*per curiam*); <u>State v. Leason</u>, 11-1757 (La. 11/23/11), 77 So.3d 933 (*per curiam*).  Further, the <u>Shaffer</u> Court addressed the older jurisprudence on this issue and expressly declined to follow it.  Just as the defendant argues in the instant matter, the <u>Shaffer</u> Court noted that relators argued "that the appropriate remedy is to resentence them according to the penalties provided for the next lesser and included responsive verdict of attempted aggravated rape."  <u>Shaffer</u>, 77 So.3d at 941.  In rejecting the suggestion that the proper remedy is resentencing under a lesser and included offense, the <u>Shaffer</u> Court, 77 So.3d at 941-42, stated:

> We agree with relators that Louisiana must comply with the <u>Graham</u> decision but reject their proposed solution.  In <u>Graham</u>, the Supreme Court held that "for a juvenile offender who did not commit homicide

the Eighth Amendment forbids the sentence of life without parole." Graham, 560 U.S. at ___, 130 S.Ct. at 2030. The Court specifically observed: "A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants ... some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." Id. The Court noted that a life sentence without parole "deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency – the remote possibility of which does not mitigate the harshness of the sentence." Id., 560 U.S. at ___, 130 S.Ct. at 2027 (citing Solem v. Helm, 463 U.S. 277, 300-301, 103 S.Ct. 3001, 3015, 77 L.Ed.2d 637 (1983) (striking down a life sentence without parole for a habitual offender convicted of issuing a "no account" check, Court notes the difference between the availability of parole as a "regular part of the rehabilitative process" and commutation of sentence as "an ad hoc exercise of executive clemency")).

Thus, under Shaffer and Graham, the appropriate remedy for a minor sentenced to life imprisonment without parole for a non-homicide crime is to let the life sentence stand, but to delete the restriction on parole eligibility. We note as well that our supreme court directed the Department of Corrections to revise Shaffer's prison master according to the criteria in La. R.S. 15:574 .4(A)(2) to reflect an eligibility date for consideration by the Board of Parole. Thus, in accordance with Shaffer, the Department of Corrections is directed to revise the defendant's prison master according to the criteria in La. R.S. 15:574.4(A)(2) to reflect an eligibility date for consideration by the Board of Parole.[FN1] See Shaffer, 77 So.3d at 942-43.

[FN1] In 2012, the Legislature enacted La. R.S. 15:574.4(D) by 2012 La. Acts No. 466, which sets forth parole criteria for juvenile non-homicide offenders who have been sentenced to life imprisonment.

- 20 -

Accordingly, the five-year sentence imposed by the trial court upon defendant is vacated. The case is remanded to the trial court for resentencing in accordance with this decision and with instructions for addressing the defendant's prison master regarding his sentence for aggravated kidnapping.[54]

Petitioner's instant challenge is based on the fact that although <u>Shaffer</u> was decided while his sentence was still on direct review, it had not yet been decided at the time the state district court imposed the sentence. He posits that the Court of Appeal's reliance on <u>Shaffer</u>, which was obviously to his detriment, therefore violated his right to substantive due process. The undersigned disagrees for the following reasons.

As an initial matter, it is axiomatic that because "there often arises a need to clarify or even to reevaluate prior opinions as new circumstances and fact patterns present themselves," <u>Rogers v. Tennessee</u>, 532 U.S. 451, 461 (2001), jurisprudence necessarily evolves rather than remains static. In light of that reality, a petitioner's right to substantive due process in judicial decisionmaking is violated only where there has been an "unjustified and unpredictable break[] with prior law." <u>Id</u>. at 462. Therefore, a change in decisional criminal law offends due process and violates the principle of fair warning "only where it is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." <u>Id</u>. (quotation marks omitted).

The Court of Appeal's reliance on <u>Shaffer</u> does not cross that impermissible line. <u>Graham</u> held that sentencing juvenile offenders to life without the possibility of parole for non-homicide offenses violated the Eighth Amendment; as a result, the state courts were then required to fashion a remedy for inmates serving such sentences. Petitioner notes that when resentencing was

---

[54] <u>State v. Burge</u>, No. 2012 KA 0761, 2012 WL 6681831 (La. App. 1st Cir. Dec. 21, 2012).

- 21 -

similarly required for some inmates after the United States Supreme Court held that mandatory *death* sentences were unconstitutional in <u>Roberts v. Louisiana</u>, 428 U.S. 325 (1976), the Louisiana Supreme Court held that the appropriate remedy was to resentence them by imposing the most serious penalty for the next lesser included offense.  <u>State v. Craig</u>, 340 So.2d 191 (La. 1976).  Petitioner argues that remedy is therefore similarly appropriate for inmates impacted by <u>Graham</u>.

Petitioner's argument is flawed.  Clearly, the state courts *could have* adopted a similar remedy as a means to fix <u>Graham</u> violations; however, that simply is not the issue.  Rather, the issue is whether petitioner had a reasonable expectation that <u>Graham</u> violations would be remedied in the same manner as <u>Roberts</u> violations.  He did not.  <u>Graham</u> was a *new* case presenting a *different* problem, and the Louisiana Supreme Court in <u>Shaffer</u> opted to solve that problem in a *different* way.  <u>Shaffer</u> did not constitute a break with prior decisional law with respect to <u>Graham</u>-type violations, because no such law directly on point existed.  As a result, it simply cannot be said that petitioner had a reasonable expectation that <u>Graham</u> violations would necessarily be remedied in the same way as <u>Roberts</u> violations or that the Court of Appeal's application of <u>Shaffer</u> was so "unexpected and indefensible" as to violate his right to substantive due process.

Petitioner also claims that his rights under the *Ex Post Facto* Clause were violated by the Court of Appeal's application of La. Rev. Stat. Ann. § 15:574.4(D) to his case.  The United States Supreme Court has explained:  "Although the Latin phrase *'ex post facto'* literally encompasses any law passed 'after the fact,' it has long been recognized by this Court that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them."  <u>Collins v. Youngblood,</u> 497 U.S. 37, 41 (1990).  The Supreme Court

further explained that the *Ex Post Facto* Clause is implicated only if a change in the law disadvantages a criminal defendant by redefining crimes, defenses, or punishment. In other words, retroactive application of a law violates the *Ex Post Facto* Clause only if it: (1) "punish[es] as a crime an act previously committed, which was innocent when done"; (2) "make[s] more burdensome the punishment for a crime, after its commission"; or (3) "deprive[s] one charged with crime of any defense available according to law at the time when the act was committed." See id. at 52.

Here, petitioner's challenge falls within the second category. Specifically, he argues:

51. In ordering that Mr. Burge's parole eligibility be determined according to the criteria of Section 574.4(D) of the Louisiana Revised Statutes, the First Circuit applied the provisions of that statute as amended on June 1, 2012, by Act Number 466 of the 2012 Louisiana Legislature. Thus, the court applied a new law, passed over eight months after Mr. Burge had been resentenced in district court, retroactively to Mr. Burge's sentence for aggravated kidnapping.

52. Mr. Burge had a better sentence of less punishment prior to the First Circuit's application of this new law on appeal. Having maintained an excellent institutional history during his thirty six years in prison, under the district court's sentence, Mr. Burge would have accrued enough credit for time served on the fifty five years of his consecutive sentences to have been immediately released from prison. In contrast, the First Circuit's arbitrary order to resentence Mr. Burge to life with the possibility of parole only gives Mr. Burge a potential chance of release at some undetermined future point in time, so that Mr. Burge may very well still die in prison. Consequently, the First Circuit's retroactive application of newly passed legislation increased Mr. Burge's punishment.

....

54. The First Circuit's reliance on the retroactive application of new law in vacating Mr. Burge's sentence and ordering the imposition of a harsher sentence increased Mr. Burge's punishment in violation of

> the prohibition against ex post facto punishment in Article 1, Section 9 of the United States Constitution. ...[55]

In its response, the state argues:

> With regard to petitioner's argument that the First Circuit Court of Appeal relied upon statutory amendments enacted after petitioner's sentencing to La. R.S. 15:574.4(D), the State submits that the Court did not utilize this provision in its ruling.  The enactment of the cited statute is mentioned by the Court in footnote 1, but the Court unmistakably based its ruling on this Court's opinion in <u>Shaffer</u> ....[56]

The Court of Appeal's intention in inserting footnote 1 is unclear.  As already noted, the Court of Appeal unmistakably provided in the body of its opinion that "the Department of Corrections is directed to revise the defendant's prison master *according to the criteria in La. R.S. 15:574.4(A)(2)* to reflect an eligibility date for consideration by the Board of Parole."[57]  However, immediately after that sentence, the Court of Appeal inserted footnote 1, which provided:  "In 2012, the Legislature enacted La. R.S. 15:574.4(D) by 2012 La. Acts No. 466, which sets forth parole criteria for juvenile non-homicide offenders who have been sentenced to life imprisonment."[58]

The undersigned speculates that the Court of Appeal was seeking to avoid a potential *Ex Post Facto* problem.  Because § 15:574.4(D) was not enacted until 2012, and because its parole eligibility requirements are more onerous than the parole eligibility requirements of §

---

[55] Rec. Doc. 1, pp. 14-15.

[56] Rec. Doc. 11, p. 12.

[57] <u>State v. Burge</u>, No. 2012 KA 0761, 2012 WL 6681831, at *3 (La. App. 1st Cir. Dec. 21, 2012) (emphasis added).

[58] <u>Id</u>. at *3 n.1.

15:574.4(A)(2), directing prison authorities to use § 15:574.4(D) retroactively would seemingly be problematic under the *Ex Post Facto* Clause.  It appears that the Court of Appeal opted to avoid any potential *Ex Post Facto* problem by instead directing that § 15:574.4(A)(2) be utilized to calculate petitioner's eligibility – *but* included footnote 1 to recognize that the Louisiana Legislature had opted to employ a less favorable calculation *prospectively*.

In summary, the undersigned agrees with the state's position that the Court of Appeal did *not* direct prison authorities to utilize § 15:574.4(D) in calculating petitioner's parole eligibility. Therefore, the Court of Appeal's decision did not implicate *Ex Post Facto* concerns.[59]

For all of these reasons, petitioner has not shown that the state court's decision denying his substantive due process due process and *Ex Post Facto* claims "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Accordingly, relief is not warranted.

---

[59] In his reply to the state's response, petitioner argues that, in any event, his Prison Master Record reflects that the Louisiana Department of Corrections did in fact apply § 15:574.4(D) when calculating his parole date.  Rec. Docs. 12, p. 4, and 12-1.  Quite frankly, the undersigned is unable to decipher the Prison Master Record, and the parties have offered no assistance on that point. Nevertheless, this Court need not resolve that issue.  Petitioner's claim is that the *Court of Appeal* improperly ordered that § 15:574.4(D) be utilized, a claim which the undersigned rejects for the foregoing reasons.

Further, even if petitioner had asserted a separate claim that the *Department of Corrections* violated his rights under the *Ex Post Facto* Clause by applying § 15:574.4(D), which he has not, that claim would appear to be moot, at least for the purposes of this *habeas corpus* proceeding.  Regardless of the methodology the Department of Corrections used to calculate petitioner's parole eligibility, he has now been found eligible for and released on parole.  No further relief would therefore appear to be available to him under § 2254 *even if* the Department of Corrections did in fact incorrectly calculate his parole eligibility date.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of **Mark Burge** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this eighth day of June, 2015.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**